# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TERRANCE PUGH,

    *Plaintiff*,

v.

KELLY HOLDEN-SELBY,
JENNY ENGSTROM,
RICHARD CADY,
JOYCE HUNTER,

    *Defendants*.
_____/

CASE NO. 12-CV-12357

DISTRICT JUDGE GERSHWIN A. DRAIN
MAGISTRATE JUDGE CHARLES BINDER

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS CADY & HOLDEN-SELBY'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
(Doc. 21)

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED**.

**II.  REPORT**

    **A.  Introduction**

Plaintiff Terrance Pugh, a state prisoner, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983, alleging that his rights were violated in 2011 when he was incarcerated at the Michigan Department of Correction's ("MDOC") G. Robert Cotton Correctional Facility. On June 20, 2012, Plaintiff's motion to proceed without prepayment of fees and costs was granted by U.S. Magistrate Judge R. Steven Whalen. (Doc. 5.) On July 25, 2012, U.S. District Judge Avern Cohn

entered an order dismissing one defendant and directing service on the remaining defendants (Doc. 7) and referred all pretrial matters to the undersigned magistrate judge. (Doc. 6.) On October 1, 2012, the case was reassigned from Judge Cohn to U.S. District Judge Gershwin A. Drain, who renewed the order of reference. (Docs. 19, 25.)

On October 24, 2012, the motion to dismiss or, in the alternative, for summary judgment that is currently before the Court was filed by Defendants Cady and Holden-Selby. (Doc. 21.) On November 9, 2012, Plaintiff responded in opposition to the motion. (Doc. 29.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B. Factual Background

Plaintiff alleges that a medical order was placed in his file in 2007 directing that he should be provided a bottom bunk. He states that he was transferred to the G. Robert Cotton Correctional Facility ("JCF") on April 13, 2011, and assigned a top bunk in violation of his medical order and despite the fact that he was recovering from a broken foot. (Compl., Doc. 1 at 4.) Plaintiff claims that after he was transferred to JCF he fell and injured his back and re-broke his foot. (*Id.*) He alleges that he was issued a wheelchair that was too small for his considerable frame and that the wheelchair broke shortly after he began using it, causing him to fall again. Plaintiff claims that he was not provided with a replacement wheelchair despite his repeated requests.

### C. Motion Standards

In deciding a motion to dismiss, the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more

than the bare assertion of legal conclusions. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore *et al.*, Moore's Fed. Practice ¶ 12.34 (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Rule 56.

A motion for summary judgment will be granted under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether

the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.    Defendant Cady**

Defendant Resident Unit Manager ("RUM") Richard Cady moves for dismissal on the ground that Plaintiff "has not made any factual allegations showing RUM Cady's personal

4

involvement in the complained-of acts, but merely states that RUM Cady did not rectify the particular situation when brought to his attention." (Doc. 21, Br. at 10.)

In a civil rights suit, each individual defendant can only be held accountable for his or her own actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("Each defendant's liability must be assessed individually based on his own actions.")

In this case, Plaintiff's complaint alleges that a response to one of his grievances was "full of blanet [sic] lies cover-ups by RUM Richard Cady and [another officer]." (Compl. at 5.) He further alleges that Defendant Cady "aided" Defendant Holden-Selby and "clearly abused his authority." (*Id.*) He states that RUM Cady "failed to acknowledge" his "bottom bunk no stairs lower level detail." (*Id.* at 8.) Finally, he alleges that Defendant Cady "had officers deliberately harass" him by shaking down his cell and removing papers. (*Id.*) Documents attached to the complaint show that Defendant Cady investigated and responded to several grievances submitted by Plaintiff (Doc. 1 at Ex. 2, 5) and also that he served as the hearing officer at two of Plaintiff's misconduct hearings. (*Id.* at Ex. 10, 16.)

I suggest that Defendant Cady is entitled to summary judgment because Plaintiff has failed to allege any conduct by Defendant Cady that rises to the level necessary to state a claim under 42 U.S.C. § 1983. The Supreme Court has held that plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). Furthermore, to state a claim against a supervisory official, the civil rights complainant must allege that the supervisory official personally participated in the constitutional

deprivation or that the supervisory official was aware of widespread abuses and, with deliberate indifference to the inmate's constitutional rights, failed to take action to prevent further misconduct. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A claimed constitutional violation must be based upon active unconstitutional behavior, *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002), and the mere denial of a prisoner's grievance states no claim of constitutional dimension. *Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003). Moreover, conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987).

In light of these standards, I suggest that Plaintiff's allegations against Defendant Cady fail to rise to the requisite level and therefore suggest that Defendant Cady's motion be granted and that he be dismissed from the case.

### E.     Exhaustion of Administrative Remedies

Defendants assert that they are entitled to summary judgment because Plaintiff failed to satisfy the exhaustion rule, which is a precondition to filing suit.

#### 1.     Governing Law and Policies

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general

6

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally

7

resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130®.[1]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

### 2.     Plaintiff's Grievances

Defendants have provided a list of the ten grievances filed by Plaintiff after his transfer to JCF on April 13, 2011. (Doc. 21-3 at Pg ID 183.[2]) The complaint in this case was filed on May 31, 2012, and only grievances that had been processed through Step III of the administrative process by that date will be considered because a prisoner "may not exhaust administrative remedies during

---

[1] The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

[2] For ease of reference in light of the numerous pages of grievance documentation, the page identification number ("Pg ID") assigned by the Court's electronic filing system will be used to identify the page cited.

8

the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"). Seven of the ten grievances satisfy that criteria, and will be addressed individually.

    a.    **Grievance number JCF-11-05-0807-17e** was submitted at Step I on May 5, 2011, and the Step III response was mailed on September 9, 2011. (Doc. 21-3 at Pg ID 183.) In this grievance, Plaintiff asserted that on April 22, 2011, he asked Defendant Holden-Selby[3] why she hadn't responded to his requests to use the unit's typewriter to do his "U.S. District Court work," but she cut him off and made a "smart remark" about him which included a racial slur. (Doc. 21-9 at Pg ID 227.) Defendant Cady was the Step I Respondent for this grievance. (*Id*. Pg ID 228.)

I suggest that this grievance is not relevant to the instant case because Plaintiff's federal complaint does not include any allegations relating to the denial of access to a typewriter or the use of racially offensive terms. Furthermore, even if Plaintiff had included these allegations, I suggest the result would be the same because Plaintiff did not allege that not having a typewriter denied him access to the courts and "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

    b.    **Grievance number JCF-11-05-0890-21c** was submitted at Step I on May 16, 2011, and the Step III response was mailed on August 24, 2011. (Doc. 21-3 at Pg ID 184.) In this grievance, Plaintiff expressed his frustration that after he returned from the hospital on May 9,

---

[3] In the grievance, Plaintiff referred to "G Unit ARUS (Holden)." For the sake of consistency, the Court will refer to this officer as Defendant Holden-Selby.

9

2011, his custody security level was increased. Specifically, he claims that he was moved from Level II housing to Level IV housing. (Doc. 21-11 at Pg ID 247.) He stated:

> I've done nothing wrong. If the ARUS (Holden) would have moved me upon my request to lower level no stairs I wouldn't be in severe pain. I shouldn't be in Level 4. This is Cruel & Unusual Punishment. Why am I being punished for MDOC Incompetence. Attorney will be notify. [sic]

(*Id*. (emphasis in original).) Defendant Cady was the respondent for this grievance. (*Id*. at Pg ID 248.) In his response, Defendant Cady explained that

> Prisoner injured himself on 5/9/11 and was issued a wheel chair. No room[s] were available in Level II to meet his new medical needs. He was moved to Level IV and returned to Level II when space was made available for his accomodations. [sic]

(*Id*.)

I suggest that this grievance has no bearing on the instant motion because Plaintiff's temporary move from Level II to Level IV to accommodate his medical needs (1) is not of constitutional significance, *Hewitt v. Helms*, 459 U.S. 460, 468-69, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) (prisoner has no constitutional right to a specific security classification); and (2) Plaintiff does not allege that Defendant Holden-Selby was the official who moved him. The only mention of her in this grievance is Plaintiff's attempt to trace the cause of his move to Level IV back to this Defendant by stating that, were it not for the earlier denial by Defendant Holden-Selby of his request to be moved to a "lower level no stairs" room, he would not have been injured and would not have needed to be moved to Level IV for medical reasons. (Doc. 21-11 at Pg ID 247.) The underlying claim that Defendant Holden-Selby earlier refused to move him to a "lower level no stairs" cell, however, was raised by Plaintiff in a separate grievance submitted the same day, which will be discussed below. (Grievance number JCF-11-05-0889-03f.)

  **c.**   **Grievance number JCF-11-05-0889-03f** was also submitted at Step I on May 16, 2011, and the Step III response was mailed on August 30, 2011. (Doc. 21-3 at Pg ID 184.) In this grievance, Plaintiff stated that he explained to Defendant Officer Holden-Selby that he had a lower-level detail, but she refused to move him and "disrespected" him by telling him he should lose weight just because he weighs 385 pounds. (Doc. 21-10 at Pg ID 241.) He also stated that on "5-9-2011 [he] fell approximately 5 steps" and had to be transported by ambulance to a hospital. He alleged that "this was caused by ARUS Holden because she failed to do her job so she caused me medical damage to me [sic]." (*Id.*) Defendant Cady was the Step I respondent for this grievance.

  I suggest that this grievance properly exhausted Plaintiff's claim that Defendant Holden-Selby denied him a lower-level cell in violation of his constitutional rights, and therefore this claim will be discussed on its merits below.

  **d.**   **Grievance number JCF-11-07-1495-12i3** was submitted at Step I on July 25, 2011, and the Step III response was mailed on November 9, 2011. (Doc. 21-3 at Pg ID 183.) The body of the Step I grievance states:

> Upon falling down G unit stairs I've been placed in a wheelchair in which is <u>broken</u>. It has came to be known the <u>metal weld is broken</u>. It <u>is too small</u>. Health Care has done nothing to correct this problem. [T]he small chair is causing my ribs to hurt from being stuffed in it. This is a form of Cruel & Unsual [sic] Punishment.

(Doc. 21-7 at Pg ID 216.) The only mention of any MDOC officials in this grievance was when Plaintiff stated that he attempted to resolve the issue prior to writing the grievance by notifying Health Care Unit Officers Lambert and Mask. (*Id.*)

11

I suggest that this grievance fails to exhaust administrative remedies with regard to any claims raised in the complaint because Plaintiff did not name any officers other than Lambert and Mask, who are not defendants in this lawsuit.

  e.  **Grievance number JCF-11-07-1496-12i2** was submitted at Step I on July 25, 2011, and the Step III response was mailed on November 9, 2011. (Doc. 21-3 at Pg ID 183.) In this grievance, Plaintiff reported his frustration that he had been fitted for gym shoes three months earlier in April 2011 and still had not received them. (Doc. 21-6 at Pg ID 210.) No MDOC officers or employees were named in this grievance. (*Id.*) I suggest that this grievance is not relevant because there was no claim set forth in the complaint regarding Plaintiff's gym shoes.

  f.  **Grievance number JCF-11-08-1599-12d1** was submitted at Step I on August 2, 2011, and the Step III response was mailed on December 1, 2011. (Doc. 21-3 at Pg ID 183.) Plaintiff's typed and single-spaced three-page Step I grievance named several individuals and stated that Plaintiff "would like a new bigger [wheel]chair" because his current wheelchair was broken. (Doc. 21-5 at Pg ID 198.) Plaintiff also reported that he was injured on July 26, 2011, when he fell out of his wheelchair and that he was "deprived of food and ice" for three days because he was unable to "travel to the Chow-Hall." (*Id.* Pg ID 199.) Neither Defendant Cady nor Defendant Holden-Selby were mentioned in this grievance, and therefore I suggest that it is irrelevant for purposes of this motion.

  g.  **Grievance number JCF-11-08-1637-12e4** was submitted at Step I on August 8, 2011, and the Step III response was mailed on December 9, 2011. (Pg ID 183) In this grievance, Plaintiff alleged that on August 3, 2011, HUM Hunter inappropriately discontinued Plaintiff's medical detail allowing for meals to be eaten in his cell. (Doc. 21-4 at Pg ID 190.) As this

12

grievance did not name either Defendant Cady or Defendant Holden-Selby and did not relate to any claim raised in the complaint, I suggest that it is not relevant to this motion.

### 3. Conclusion Regarding Exhaustion of Administrative Remedies

Because Plaintiff never named Defendant Cady in any of his grievances that were processed through Step III, I suggest that Defendant Cady is entitled to summary judgment on the alternate ground that Plaintiff failed to exhaust his administrative remedies with regard to any of the allegations made against Defendant Cady.

With regard to Defendant Holden-Selby, I suggest that Plaintiff exhausted his claim that she was deliberately indifferent to his serious medical needs when she denied him a lower-level cell, but that she is entitled to the grant of summary judgment on all remaining claims due to Plaintiff's failure to comply with the exhaustion requirement.

### F. Cell-Assignment Claim Against Defendant Holden-Selby

### 1. Governing Standards

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. A claim of deliberate indifference encompasses both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the

deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. The state of mind required is one that evinces "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Mere negligence will not suffice. *Daniels v. Williams*, 474 U.S. 327, 330-33, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

**2.    Discussion**

Defendant Holden-Selby has provided an affidavit stating that when Pugh was transferred to JCF on April 13, 2011, he

> was processed through the front gates and given a cell assignment from the Control Center staff, after confirmation has been made with medical staff for any special accommodations. Control Center placed Pugh in Level II Housing Unit G-90, which is on the upper level of the Unit.

(Holden Selby Aff. ¶ 6, Doc. 21-14 at Pg ID 255.) Defendant also explains that

> [n]one of the Level II housing units at JCF, including G-Unit, have ground floor rooms. The housing units either have stairs leading down to lower level cells or stairs leading up to upper level cells from the base area.
>
> Since Pugh did not claim to have a Special Accommodation Notice (SAN) for "no stairs" and in light of the Control Center's responsibility to assign Pugh an appropriate cell assignment, I did not believe there was a need to change Pugh's housing assignment. Furthermore, Pugh's transfer order did not indicate that any special handling was required.

(*Id*. ¶¶ 7-8.) Attached to Defendant Holden-Selby's affidavit is a copy of Plaintiff's Transfer Order, which provided that no special handling was required. (Doc. 21-14 at Pg ID 258.)

Plaintiff claims that years prior to his transfer to JCF, he was given a special accommodation for lower-level housing, and there is documentation to support this claim. On May 19, 2011, Nurse Brenda Upston at JCF generated a report of Plaintiff's Bureau of Health Care

14

Services Special Accommodations Orders showing that on May 27, 2010, Dr. David L. Sharp ordered a special accommodation for "Housing: lower levels RMI." (Doc. 21-10 at Pg ID 239.) "RMI" is the acronym for the MDOC facility known as the Michigan Reformatory, which is located in Ionia, Michigan. (*See* http://michigan.gov/corrections/0,4551,7-119-1381_1385-5369--,00.html.) Plaintiff, however, has not refuted Defendant's statement in her affidavit that the lower levels at JCF require an inmate to navigate just as many stairs as the upper level. Further, since the special accommodation from 2010 specifically noted "lower levels RMI," I suggest that the evidence relevant to whether Defendant Holden-Selby possessed a state of mind "tantamount to intent to punish," *Miller*, 408 F.3d at 813, when she denied Plaintiff's request to be moved to a lower-level cell at JCF does not present a "sufficient disagreement to require submission to a jury," but rather it "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Accordingly, I suggest that Defendant Holden-Selby be granted summary judgment on the claim that she violated Plaintiff's constitutional rights when she denied Plaintiff's request to alter his cell assignment.

### G. Retaliation Claim

Plaintiff's complaint alleges that Defendant Holden-Selby retaliated against him for filing grievances against her by falsely charging him with misconduct. (Compl., Doc. 1 at Pg ID 5 ("To keep me away from the telephone still ARUS K. Holden-Selby had written (2) tickets in retaliation to cover up her faults.").)

#### 1. Governing Standards

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal

connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011). The filing of a non-frivolous grievance constitutes protected conduct so as to meet the first element. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007).

**2.     Discussion**

I first suggest that Defendant Holden-Selby is entitled to summary judgment on the claim of retaliation because the review undertaken above demonstrates that Plaintiff failed to exhaust his administrative remedies with regard to this claim. *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (retaliation claims must be exhausted the same as all other claims).

Nevertheless, even if this claim is addressed on its merits, I suggest that the result be the same. Defendant Holden-Selby asserts *inter alia* that she only wrote one misconduct ticket against Plaintiff and that it was written entirely based upon his behavior. (Doc. 21 at Pg ID 168.) Defendant Holden-Selby further asserts that she is entitled to summary judgment because Plaintiff was found guilty of the misconduct charge. (*Id.*) Defendant cites *Jackson v. Madery*, 158 F. App'x 656, (6th Cir. 2005), where the Sixth Circuit held that "Jackson fail[ed] to state a claim against Madery because Jackson was convicted of the misconduct charges. A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Id.* at 662 (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).

Accordingly, I suggest that Defendant Holden-Selby is entitled to summary judgment on Plaintiff's claim of retaliation and that her motion be granted.

16

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

            s/ *Charles E Binder*
            CHARLES E. BINDER
Dated: June 6, 2013           United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Allan Soros, served by first class mail on Terrance Pugh, #492273, Carson City Correctional Facility, 10274 Goyer Rd., Carson City, MI, 48811; and on District Judge Drain in the traditional manner.

Date: June 6, 2013          By     s/*Jean L. Broucek*
            Case Manager to Magistrate Judge Binder